**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VINCENT MARTIN, individually and on behalf of similarly situated individuals, | Case No. 26 CV 01354 |
| Plaintiff, | Honorable Sunil R. Harjani |
| v. | |
| WESTROCK SHARED SERVICES, LLC, WESTROCK CP, LLC, WESTROCK RKT, LLC, and WESTROCK COMPANY, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Vincent Martin claims he was asked to disclose his genetic information, namely his family medical history, during a pre-employment physical exam. WestRock,[1] his future employer, purportedly required this physical exam as a part of its hiring process. According to Martin, these questions violated his rights under the Illinois Genetic Information Privacy Act, 410 ILCS 513/25(c)(1) (GIPA). WestRock moved to dismiss, arguing the Labor Management Relations Act preempts Martin's state law claim, and that his claim unfairly burdens the Illinois constitutional right to collective bargaining.

At this early stage of the case, the Court cannot determine whether the Labor Management Relations Act preempts Martin's claim. Accordingly, WestRock's motion is denied, but with leave to raise the issue at summary judgment.

### Background

According to the Complaint, Vincent Martin applied for a job with WestRock in January 2024. [1-1] ¶ 39. As part of the hiring process, WestRock required Martin to undergo a physical exam through its third-party medical examiner. *Id.* ¶¶ 40–41. During that physical, the examiner asked Martin about his family medical history, including inheritable diseases and disorders. *Id.* ¶ 42. Martin answered the questions. *Id.* ¶ 43. He now asserts the details he shared about his family's inheritable

---

[1] WestRock refers collectively to Defendants WestRock Shared Services, LLC, WestRock CP, LLC, WestRock RKT, LLC, and WestRock Company.

medical conditions constitute genetic information protected under GIPA. *Id*. ¶ 44. Martin further contends that WestRock mandated his pre-employment physical, and therefore it directly or indirectly requested the supposed genetic information. *Id*. ¶¶ 7–8, 40, 48.

Martin filed a putative class action in the Circuit Court of Cook County claiming WestRock's pre-employment questioning violated GIPA. [1-1] at 1.[2] WestRock removed the case to federal court based on federal question jurisdiction, arguing the Labor Management Relations Act preempts the state law GIPA claim. [1] ¶¶ 9–20. WestRock alternatively based removal on diversity jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). *Id*. ¶¶ 21–25.

## Legal Standard

WestRock now moves to dismiss under Rules 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction. If external facts cast doubt on the court's jurisdiction, it may properly rely on evidence beyond the complaint to determine whether subject matter jurisdiction exists. *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017).

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, plaintiffs need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). In reviewing the sufficiency of the complaint, the Court construes the complaint in the light most favorable to plaintiff, accepts well-pleaded facts as true, and draws all inferences in plaintiff's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

## Discussion

WestRock raises two issues in its motion to dismiss. First, it asserts that this Court lacks subject matter jurisdiction because Martin's claim is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. WestRock argues that, at all relevant times, Martin's employment relationship was subject to a Collective Bargaining Agreement (CBA). Therefore, according to WestRock, Martin must follow the grievance and arbitration procedures in the CBA, and his claim should be dismissed under Rule 12(b)(1). Second, WestRock moves to dismiss under Rule 12(b)(6) because Martin's GIPA claim infringes on workers' right to collectively bargain, as protected by the Illinois Constitution.

---

[2] Defendant Axelon Services Corporation was voluntarily dismissed from case. [33].

## I.  Subject Matter Jurisdiction

As an initial matter, the Court must determine if it has subject matter jurisdiction over the dispute. WestRock removed this action from state court on two bases: federal question jurisdiction because Martin's claim is supposedly preempted by Section 301 of the Labor Management Relations Act, and diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d). [1] ¶¶ 9–11, 21. Though WestRock now contends that the Court lacks subject matter jurisdiction because of preemption, they ignore that CAFA may provide an independent ground for federal jurisdiction.

WestRock may remove a state court action to federal court if the case could have been filed in federal court initially. 28 U.S.C. § 1441(a). CAFA permits filing a class action in federal court if 1) the class involves more than 100 persons, 2) at least one alleged class member is diverse from at least one defendant, and 3) the amount in controversy exceeds $5,000,000. *Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234, 238 (7th Cir. 2021). For the amount-in-controversy requirement, a plausible, good-faith estimate will suffice. *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017).

CAFA's requirements are met here. First, WestRock estimates that at least 334 individuals were given pre-employment physical exams in the five years before Martin filed this action, meaning the alleged class exceeds 100 persons. [1] ¶ 25. Second, the parties are sufficiently diverse. Martin is a citizen of Illinois. [1-1] ¶ 10. Defendant WestRock Company is organized under Delaware law with its principal place of business in Atlanta, Georgia, making it a citizen of Delaware and Georgia. *Id.* ¶¶ 15–16; [1-3] ¶ 10; *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 830 (7th Cir. 2020). Third, this case plausibly meets the $5,000,000 amount-in-controversy threshold. Martin seeks statutory damages of $15,000 for each intentional or reckless GIPA violation, and $2,500 for each negligent violation. [1-1] at 18; 410 ILCS 513/40(a)(1)–(2). Multiplying the potential 334-person class by $15,000 in damages per violation, the class could recover $5,010,000. CAFA's three elements are satisfied, and the Court has diversity subject matter jurisdiction.

## II.  Preemption

With subject matter jurisdiction secured, the Court returns to WestRock's preemption argument.[3] According to WestRock, Martin's state law claim should be dismissed because it is preempted by the Labor Management Relations Act. Section

---

[3] WestRock raised its preemption argument under Rule 12(b)(1). Though the Court has diversity subject matter jurisdiction under CAFA, courts may consider motions under Rule 12(b)(1) as motions to dismiss for failure to state a claim when warranted. *Miller v. Herman*, 600 F.3d 726, 732–33 (7th Cir. 2010). Thus, the Court considers WestRock's preemption argument pursuant to Rule 12(b)(6).

301 of the Labor Management Relations Act preempts state law claims that are sufficiently connected to a collective bargaining agreement. *Sarauer v. Int'l Ass'n. of Machinists & Aerospace Workers, Dist. No. 10*, 996 F.3d 661, 670 (7th Cir. 2020). This is because courts apply federal law to CBAs to ensure the uniform interpretation of labor contracts. *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498 (7th Cir. 1996). Where a state law claim is preempted, the federal statute displaces the state claim and provides the exclusive cause of action for the union and employees. *Sarauer*, 996 F.3d at 669–70.

Though preemption is broad, not all claims that involve employment or a CBA trigger preemption. *In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 286 (7th Cir. 2001). Rather, Section 301 only preempts state law claims that are founded directly on the CBA, or that require interpretation of the agreement to resolve an element of the claim. *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015). If, on the other hand, the CBA is only a "tangential consideration" in addressing an otherwise independent state law claim, no preemption applies. *Loewen Grp. Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1422 (7th Cir. 1995).

### A. Rights Founded on the CBA

With these principles in mind, the Court turns to WestRock's preemption arguments. WestRock contends that Martin's GIPA claim is founded on its right to conduct physical exams, which is memorialized in the CBA.[4] According to the Complaint, Martin was asked about his family medical history during a pre-employment physical exam. WestRock maintains that it negotiated this physical exam with the union, and therefore Martin's GIPA claim rests on rights created by the CBA.

In cases where the state law claim is founded on the CBA, the right at issue only exists because of the agreement. For example, in *Boogaard v. National Hockey League*, the state law claims concerned a duty arising from a substance abuse agreement, rather than the CBA. 891 F.3d 289, 294 (7th Cir. 2018). But there, the substance abuse agreement was integrated into the CBA. *Id*. Therefore, according to

---

[4] The Complaint does not incorporate or reference the CBA. WestRock filed the CBA as an exhibit to its notice of removal. [1-3]. Normally, in resolving a Rule 12(b)(6) motion to dismiss, the Court only considers the Complaint, its attachments, documents critical to and referenced in the Complaint, and documents subject to judicial notice. *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021). But Courts have considered CBAs when ruling on a motion to dismiss, even when not attached to the Complaint. *Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007). Further, WestRock asks this Court to consider whether Martin's claim actually rests on the CBA, meaning the contract may be critical to the Complaint. For his part, Martin does not question the CBA's authenticity or claim that it cannot be considered. Accordingly, the Court concludes it may properly consider the CBA in addressing this motion to dismiss.

the appellate court, any claim based on the substance abuse agreement derived from the CBA. *Id.* Similarly, in *Lehr v. Ascension Health*, the plaintiffs' claims depended on programs, agreements, and pay and benefit details based directly on specific CBA provisions. 2025 WL 3620360, at *2–3 (N.D. Ill. Sept. 29, 2025). The district court held the state law claims were substantially dependent on the CBA and thus preempted. *Id.* at *3.

In contrast, courts find no preemption where the state law claims are independent of the CBA. *Loewen Group International Inc. v. Haberichter* helps demonstrate the difference. 65 F.3d at 1421–1423. There, the Seventh Circuit found that an employee's alleged breaches of his individual employment agreement, non-compete contract, and fiduciary duty were not preempted by Section 301. *Id.* at 1422. In that case, even though the employee was also a party to a CBA, the individual employment agreement created his employment relationship and gave rise to the allegedly violated rights. *Id.* at 1423. The state claims were therefore grounded in an independent source other than the CBA. *Id.*

The state law claim in this case is more like the claims in *Loewen Group*, rather than those in *Boogaard* or *Lehr*. The heart of Martin's GIPA claim is a privacy right. GIPA is a privacy-centric statute that broadly aims to protect genetic testing and information. *See Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023). Martin's right to his genetic privacy arises from GIPA itself, not from any contract term negotiated between the employers and union. Indeed, the CBA is silent on the issue of genetic privacy or even the collection of family medical history. Unlike the plaintiffs in *Boogaard* or *Lehr*, whose rights were created by CBAs, Martin's right to genetic privacy comes from the Illinois statute. Therefore, Martin's right is independent of the CBA.

## B. Interpretation of the CBA

WestRock puts forth a second basis to find preemption. According to WestRock, resolution of Martin's GIPA claim requires interpreting the CBA, meaning Section 301 preempts his claim. As discussed above, state law claims are preempted if interpreting the CBA is required to resolve the claim. *In re Bentz Metal Prods. Co., Inc.*, 253 F.3d at 289. However, there is no preemption if the court merely references or consults the CBA. *Id.*; *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Thus, the preemption inquiry demands a case-by-case analysis particular to each state law claim and CBA. *In re Bentz Metal Prods. Co., Inc.*, 253 F.3d at 285. Courts begin this inquiry by examining the elements of the state law claim. *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 768 (7th Cir. 1991).

Relevant to Martin's claim, GIPA prohibits employers from "directly or indirectly" "solicit[ing], request[ing], [or] requir[ing] . . . genetic information of a person or family member of the person . . . as a condition of employment, preemployment application, labor organization membership, or licensure." 410 ILCS

513/25(c)(1); *see Taylor v. Union Pac. R.R. Co.*, 2024 WL 3425751, at *3 (N.D. Ill. July 16, 2024). WestRock makes three arguments for why Martin's GIPA claim requires interpreting the CBA.

First, WestRock points to language in the CBA stating that "the Company's practice regarding physical examinations will be continued." [1-3] at 27. It argues the Court will need to interpret the scope of the "practice regarding physical examinations" agreed to in the CBA. The Court disagrees. The meaning of this phrase is immaterial to Martin's claim. The Court can determine whether a medical examiner asked Martin to answer questions about his family medical history, as he alleges, without knowing what the employers and the union meant by the "practice regarding physical examinations." That is instead a "purely factual" inquiry about WestRock's conduct, which can be resolved without reference to the CBA. *Loewen Grp. Int'l, Inc.*, 65 F.3d at 1422.

Second, WestRock contends that the Court must look to the CBA to determine whether it advised Martin about disclosing his genetic information. WestRock is correct that Martin alleges that he was never cautioned to refrain from disclosing any genetic information. [1-1] ¶ 45. However, as noted above, Martin need not establish what WestRock told him to sustain a GIPA violation under 410 ILCS 513/25(c)(1). Simply requesting genetic information is prohibited by the statute. *Henry v. AbbVie, Inc.*, 2024 WL 4278070, at *7 (N.D. Ill. Sept. 24, 2024). Neither party explains the legal relevance of this allegation, and in any event, Martin could prove his GIPA claim without it. Once again, it is unnecessary to interpret the CBA to resolve the GIPA claim.

WestRock's third argument is more convincing. WestRock disputes that Martin can prove the purpose for requesting his genetic information without resorting to the CBA. Recall that GIPA only prohibits soliciting genetic information as a *condition* of employment, preemployment application, labor organization membership, or licensure. 410 ILCS 513/25(c)(1). So, Martin must demonstrate the alleged questioning occurred for one of these reasons to sustain his claim.

At this early stage of litigation, it is impossible to determine whether this element calls for any analysis of the CBA. For example, it is not obvious that the sentence in the CBA—the "practice regarding physical examinations will be continued"—even applies to the pre-employment exam alleged in the Complaint. The CBA may be wholly inapplicable.[5] Alternatively, the purpose of the exams may be derived from another document, and not the CBA, which would similarly relieve any

---

[5] Additionally, the Court notes it granted Martin limited discovery to determine if he was covered by the CBA during the alleged pre-employment physical exam. [22]. However, the parties have not addressed whether the CBA applies either to Martin or to the physical exam at issue.

need to interpret the CBA's meaning. It is also unclear whether the parties dispute that the pre-employment examination was a condition of employment, and if it is undisputed, then the element is established, and there would be no need to interpret the CBA. Since such facts are not before the Court, it cannot determine whether resolving Martin's GIPA claim requires interpreting the CBA.

Other courts similarly decline to decide preemption on a motion to dismiss when faced with undeveloped records. Consider *Basa v. Rizza Chevrolet, Inc.*, 750 F. Supp. 2d 987 (N.D. Ill. 2010). There, the defendant argued an employee's claim under the state minimum wage law was preempted, but the defendant had not identified a dispute regarding the interpretation of any CBA provisions. *Id.* at 989. With no clear need to interpret the CBA, the district court found it was premature to decide whether preemption applied. *Id.* at 989. Likewise, in *Building Trades United Pension Trust Fund v. SJ Landscaping, LLC*, 755 F. Supp. 3d 1108 (E.D. Wis. 2024), the district court denied a union's motion to dismiss where the record did not indicate that interpreting the CBA would be needed. *Id.* at 1118. In that case, the landscaping company brought fraud and misrepresentation claims against the union stemming from the union's representations about certain projects. *Id.* at 1112. The union argued the court would need to interpret whether those projects fell within the scope of the CBA to assess if the landscaping company's reliance on its representations was reasonable. *Id.* at 1115. The landscaping company disagreed. *Id.* It maintained that there was no dispute about whether the projects were within the scope of the CBA, so there was no need for interpretation. *Id.* The district court found that, though the union demonstrated that interpreting the CBA might be necessary, there was insufficient information to decide if it was actually necessary on a motion to dismiss. *Id.* at 1118. Finally, in *Harris-Morrison v. Sabert Corp.*, 2024 WL 5264702 (N.D. Ill. Dec. 31, 2024), another district court declined to find ERISA preempted a GIPA claim where it was unclear if an ERISA plan was even involved. *Id.* \*4–5. There, the employer argued the GIPA claim related to a workplace wellness program, and such program was controlled by an employee benefits plan. *Id.* at \*2. However, the complaint did not mention any employee benefits plan, so the court had no basis to infer preemption. *Id.* at \*4. The district court required further discovery to know whether the claim concerned an ERISA plan, and thus postponed ruling on preemption. *Id.* at \*5. As in *Basa*, *Building Trades United Pension Trust Fund*, and *Harris-Morrison*, it is too early to decide preemption. WestRock has not yet identified a dispute that requires interpreting the CBA's meaning.

Recall that the existence of a CBA is not sufficient. If the Court only references the CBA or has to consult it, then there is no preemption. *In re Bentz Metal Products, Co., Inc.* illustrates this point. 253 F.3d at 289. In that case, employees filed a mechanic's lien to secure vacation pay owed to them under the CBA. *Id.* at 285. However, the amount owed to the employees was undisputed. *Id.* at 287. Even though the entitlement to vacation pay stemmed from the CBA, and therefore referenced the CBA, the state law claim was not preempted. *Id.* at 289. There was no dispute about the CBA's meaning that required interpretation. *Id.* at 287. On the other hand, in

*Atchley v. Heritage Cable Vision Associates*, the appellate court found Section 301 preempted state wage payment claims. 101 F.3d at 500. Those state law claims concerned unresolved questions about timing and payment of wages. *Id*. Thus, a court would need to interpret the CBA provisions regarding the wage increases and bonus payments at issue to determine the employer's obligation to pay. *Id*.

As demonstrated by the difference between *In re Bentz Metal Products, Co, Inc.* and *Atchley*, the preemption analysis depends on a dispute about the meaning of CBA terms. So, in this case, it is still possible that an interpretation of the CBA is necessary, but it is also possible that this case involves a mere reference to the CBA without the need for interpretation.

Given the current phase of the case, WestRock's motion to dismiss based on preemption is denied. WestRock may address the issue on a motion for summary judgment after discovery and re-raise the preemption argument.

### III.    Article 1, Section 25 of the Illinois Constitution

As a separate basis to dismiss, WestRock argues that the Illinois Constitution protects workers' right to collectively bargain, and Martin's GIPA claim burdens that right. As relevant here, the Illinois Constitution protects employees' "fundamental right to organize and to bargain collectively through representatives of their own choosing for the purpose of negotiating wages, hours, and working conditions, and to protect their economic welfare and safety at work." Ill. Const. art. 1 § 25. WestRock contends that, if Martin's claim is allowed to proceed, it will infringe on this right to negotiate with unions.

WestRock's argument is misplaced at this stage of the litigation. A Rule 12(b)(6) motion tests whether the complaint plausibly states a claim for relief. *Richards*, 696 F.3d at 637. Martin needs only to plead a short, plain statement of his claim. Fed. R. Civ. P. 8. WestRock provided no basis to find Martin's GIPA claim insufficiently pled.

Rather than attack the sufficiency of the pleading, WestRock's argument about rights under the Illinois Constitution goes to the merits of his claim. WestRock asserts that Martin cannot bring this GIPA claim against it because it negotiated the physical examinations with the union. Essentially, WestRock raises a defense, which "limits or excuses defendant's liability even if the plaintiff establishes a *prima facie* case." *Bell v. Taylor*, 827 F.3d 699, 704–05 (7th Cir. 2016). More typically, defendants raise Illinois constitutional protections as affirmative defenses, which was done in *City of East St. Louis v. Pharmacia LLC*, 2022 WL 613278, at *2 (S.D. Ill. Mar. 2, 2022), and *Behn v. Kiewit Infrastructure Co.*, 2018 WL 5776293, at *3 (N.D. Ill. Nov. 2, 2018). Such affirmative defenses are resolved at later stages of litigation because they turn on facts that are not currently before the Court. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). And here, WestRock's

constitutional argument is premature for the same reasons as its preemption argument. Specifically, at this stage of the litigation, it is unclear if the pre-employment exam at the heart of Martin's claim even relates to the CBA. Martin's claim would not burden the supposed right to collective bargaining if it is completely disconnected from the negotiations. Thus, the case requires further development before assessing a defense based on workers' rights in the Illinois Constitution.

As a final note, WestRock's argument is underdeveloped. WestRock cites two cases for the generic propositions that unions have wide latitude in collective bargaining and that states cannot penalize such negotiations. WestRock provides no legal basis for applying the Illinois constitutional protection they invoke to this case on a motion to dismiss. This falls far short of rebutting the statute's presumed constitutionality. *People v. Sharpe*, 839 N.E.2d 492, 497 (2005).

Because WestRock's argument raises a defense that cannot be resolved at this time or on the legal authority it presents, the Court denies WestRock's 12(b)(6) motion.

## Conclusion

For the reasons stated above, WestRock's motion to dismiss [15] is denied. At this early stage of the litigation, it is unclear if the Labor Management Relations Act preempts Martin's GIPA claim. Additionally, WestRock's argument regarding workers' rights under the Illinois Constitution is similarly premature and may be more properly raised as an affirmative defense.

**SO ORDERED.**

Dated: July 31, 2026

_____
Sunil R. Harjani
United States District Judge

9